UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **LOUISIANA UNITED BUSINESS ASSOCIATION CAS. INS. CO.** | **:** | **DOCKET NO. 15-cv-1769** |
| **VERSUS** | **:** | **JUDGE MINALDI** |
| **J & J MAINTENANCE, INC., ET AL** | **:** | **MAGISTRATE JUDGE KAY** |

**MEMORANDUM RULING**

Before the court is a Motion to Remand [doc. 14] filed on June 26, 2015 by plaintiff Louisiana United Business Association Casualty Insurance Company ("LUBA," "plaintiff") in response to a Notice of Removal [doc. 1] filed on May 7, 2015 by defendant Pride Industries ("Pride"). Pride opposes the motion to remand [doc. 21], and is joined in doing so by other defendants, The Migues Deloach Company ("Deloach") [doc. 22], Entergy Louisiana, LLC ("Entergy Louisiana") [doc. 23], and J & J Maintenance, Inc. ("J & J") [doc. 24] (collectively, "defendants").[1] For the reasons stated below, the plaintiff's motion is hereby **DENIED**.

**I.**
**BACKGROUND**

The present case involves the employment of Jonathon West ("West") by Deloach, a subcontractor on the New Shira Dental Clinic remodeling project ("remodeling project") at Fort Polk, Louisiana.[2] Doc. 1, att. 2, p. 3; Doc. 15, att. 1, p. 53. West was fatally injured at the remodeling project on January 4, 2012, while operating a boom manufactured by Volvo. Doc. 1,

---

[1] Defendant Volvo Construction Equipment Rents ("Volvo") has not joined in the motion but expresses no opposition.
[2] J & J was the general contractor in charge of the project. Doc. 1, att. 2, p. 4. Pride is the operator of the electrical system at Fort Polk while Entergy Louisiana is alleged to have responsibility for the power line at the remodeling project. Doc. 1, att. 2, pp. 10, 19–20.

att. 2, pp. 3–4. The plaintiff alleges that the boom overextended and struck power lines at the remodeling project. *Id.* at 4. It also alleges that Entergy Louisiana failed to turn off the power in a timely manner after the accident occurred thus delaying West from receiving medical attention. *Id.* Finally, it contends that Pride received a work request from the U.S. Army to relocate power lines at the remodeling site but that it performed this work negligently and failed to follow the Army's specifications as to where the lines should be moved. *Id.* at 25.

Pride maintains that it followed the Army's work request for power line relocations connected to the remodeling project and that it completed this work in line with the specifications provided.[3] Doc. 21, att. 1, pp. 1–3. Pride's general manager also states that the Army usually sends a deficiency report to Pride "if the government has an issue or concerns regarding unsatisfactory performance of its requests," and that Pride received no such report relating to this request. *Id.* at 2.

This action was instituted by the plaintiff, who was workers' compensation insurer for Deloach, on October 1, 2012, in the 30th Judicial District Court, Vernon Parish, Louisiana. Doc. 1, att. 2, pp. 2–3. The plaintiff seeks relief pursuant to:

- Unspecified Louisiana laws "including but not limited to exercising its rights under . . . reimbursement, tort, contract, unjust enrichment, and general obligation." Doc. 1, att. 2, p. 3.
- A Louisiana workers' compensation provision, LA. REV. STAT. 23:1101 *et seq.*, relating to suits by the person obligated to pay workers' compensation benefits against a third party who caused the injury. *Id.* at 3; LA. REV. STAT. 23:1101(b).

---

[3] Pride's general manager states that the company received a work request from the Army on July 12, 2011 to provide alternate feed to street lights by the New Shira Dental Clinic, located on Fort Polk, Louisiana. This request required replacing a deteriorating power pole with a pole previously purchased by the federal government." Doc. 21, att. 1, p. 1. Pride provides a copy of the work order processed from the request, showing that the work was completed on July 14, 2011. *Id.* at 3.

The original action named as defendants J & J, Entergy Corporation (Entergy Louisiana substituted in first amended complaint), Volvo, and their respective insurers. *Id.* at 2–3, 10. In a third party demand served on other counsel of record on December 19, 2012, J & J joined Deloach as a third party defendant. Doc. 15, att. 1, pp. 52–59. The plaintiff joined Pride as a defendant in the same action with a petition served on April 30, 2015. Doc. 1, att. 2, pp. 19–20.

With the consent of the other named defendants, Pride removed the action to this court on May 27, 2015. Doc. 1, pp. 1–2. The plaintiff moved to remand on June 26, 2015. Doc. 14, p. 1. Pride opposes the motion to remand, and was joined by other defendants in doing so.[4] Doc. 21, p. 1. The plaintiff filed a reply to the defendants' opposition on July 24, 2015. Doc. 28, p. 1.

## II.
### LAW & ANALYSIS

Any civil action brought in a State court of which the district courts have original jurisdiction may be removed to the proper district court. 28 U.S.C. § 1441(a). However, the federal district court must remand the action to state court if it finds that it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The removing party bears the burden of showing that removal was procedurally proper and that federal jurisdiction exists. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

Pride asserts two bases for subject matter jurisdiction in its notice of removal: federal officer removal jurisdiction and federal enclave jurisdiction. The plaintiff challenges the application of both rules to the instant case. It also contends that state law exceptions within federal enclave jurisdiction and limitations on removal under cases arising under workers' compensation laws necessitate remand. We therefore review the plaintiff's challenges to determine whether the

---

[4] It is joined in doing so by Deloach, Entergy Louisiana, and J & J. Doc. 22, p. 1; Doc. 23, p. 1; Doc. 24, p. 1.

matter ought to be remanded to state court for lack of subject matter jurisdiction, with the burden remaining on the defendants to establish that federal jurisdiction exists.

### A. Federal Officer Removal Jurisdiction

Section 1442(a) of Title 28, *United States Code*, provides that an action in state court may be removed to federal court if it is against the U.S. government, including agencies and officers of the government "or any person acting under that officer." In order to justify removal under this statute, a party must show that:

(1) it is a person under the statute's meaning. *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998).

(2) it acted "under color of office," shown for contractors when they "act pursuant to a federal officer's directions and . . . a causal nexus [existed] between the [defendant's] actions under color of federal office and the plaintiff's claims." § 1442(a)(3); *Winters*, 149 F.3d at 398.

(3) it can articulate a "colorable applicability" of a federal defense to the plaintiff's claims. *Winters*, 149 F.3d at 400 (internal citations omitted).

The plaintiff does not dispute that Pride satisfies the first factor, given the acceptance of corporate entities as private persons. *Id.* at 398. We therefore turn to the second and third factors.

### 1. Acting under color of federal office

The plaintiff first asserts that Pride, as a federal contractor, cannot claim that it was acting under color of federal office because (1) it did not act pursuant to federal direction when it moved power lines at the remodeling project and (2) there was no causal nexus between the work completed at federal direction and the plaintiff's claims.

As the plaintiff states, federal direction must be sufficiently detailed to support the idea that there is a "substantial federal interest" involved in the activity. *Winters*, 149 F.3d at 398 (quoting *Winters v. Diamond Shamrock Chem. Co.*, 901 F.Supp. 1195, 1200–01 (E.D. Tex. 1995)). In *Winters*, the Fifth Circuit found that government specification of the chemical composition,

packaging, and delivery of Agent Orange was a sufficient exercise of control to show federal direction under § 1442(a)). 149 F.3d at 399–400. It found that a causal nexus arose between the plaintiff's claims and this government control when the plaintiff alleged that her exposure to trace elements of dioxin in Agent Orange caused her terminal disease. *Id.* We observe that sufficient federal direction has also been found under § 1442(a) when a private contractor performed maintenance on generators at an Army encampment, based on the fact that this work was done under Army supervision and that the contractor could not expand the scope of its work without authorization. *McGee v. Arkel Int'l, LLC*, 716 F.Supp.2d 572, 577 (S.D. Tex. 2009).

Pride shows the extent of government direction of the work by providing an affidavit from its general manager at Fort Polk and a copy of the work order produced from the Army's request to relocate the power lines. The general manager states that the Army sent Pride a work request "to provide alternate feed to street lights" at the remodeling project and to replace a deteriorating power pole at the site with a new one provided by the government. *See supra* note 3 and accompanying text. The plaintiff does not dispute the authenticity of this evidence, but instead contends that the level of direction is insufficient § 1442(a).

From our review of the pleadings and evidence, we disagree. The work order shows that the Army, a branch of the federal government, narrowly defined the type of work to be done by Pride and the site at which it was to be performed. The Army also provided some of the material to be used. It exerted control over the work done by Pride through the use of deficiency reports. Accordingly, we find that the defendants have shown sufficient government control over the project.

Turning to the nexus requirement, it is clear that some of the plaintiff's allegations arise from these activities as they relate to placement of the power lines that were later struck by West.

We also find from the evidence offered that this work was completed at the Army's direction. We therefore hold that Pride was acting pursuant to federal direction and that there was a causal nexus between these actions and the plaintiff's claims, satisfying the second part of the test articulated in *Winters*.

### 2. *Colorable Applicability of a Federal Defense*

To satisfy the final requirement, the defendants must show that they can raise a federal defense to the plaintiff's claims. *Winters*, 149 F.3d at 400. As the defendants note, this test does not require that they prove the validity of the defense in their case: A defendant "need not win his case before he can have it removed." *Id.* (citing *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)). Instead, they must show the "colorable applicability" of the defense to their case. *Id.*

The defendants claim application of the government contractor defense.[5] Government contractors are shielded from civil liability when they meet all of the following requirements:

> (1) The government approved reasonably precise specifications for the service;
> (2) The contractor's service conformed to those specifications.
> (3) The contractor warned the government of any dangers that were known to the contractor but not the government.

*Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988). *See also Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 n. 6 (2001) (expanding *Boyle* from products liability to all claims arising from services performed by government contractors). We therefore analyze each requirement to determine whether the defendants have shown its colorable application to the case at hand.

---

[5] Drawn from the discretionary function immunity in the Federal Tort Claims Act, 28 U.S.C. § 2680(a), the government contractor defense provides derivative immunity to contractors performing these discretionary functions on behalf of the federal government. *Boyle*, 487 U.S. at 526–28.

### *a. Government approval of reasonably precise specifications*

The first requirement of the government contractor defense is the existence of government-approved specifications for the contractor's work. *Boyle*, 487 U.S. at 512. As the plaintiff notes, the specifications must be particular to the contractor's work; federal regulations of general applicability will not meet this standard even if they are highly detailed. *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153 (2007). Speaking to the original products liability context of *Boyle*, the Fifth Circuit held that specifications are reasonably precise if they "address, in reasonable detail, the product design feature alleged to be defective." *Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 438 (5th Cir. 2000). Finally, the specifications must be the product of some exercise of discretion by the government. *Trevino v. Gen. Dynamics Corp.*, 865 F.3d 1474, 1480 (5th Cir. 1989). The first arm of the *Boyle* test will not be satisfied if the government cedes all discretion to the contractor and merely acts as a rubber stamp to the contractor's activities. *Id.*

The defendants claim that government-approved, reasonably precise specifications existed here within the work request. They focus again on the pole and the government's role in providing the replacement. In contrast, the plaintiff says that reasonably precise specifications were not provided because the government failed to identify where the lines should be relocated to. Under *Kerstetter* and the inclusion of allegations focused on the placement of the lines, we find that the specifications ought to address where the lines were relocated. However, we make note of two limitations: the defendants need only show a colorable applicability of the defense to their case and the specifications need only be **reasonably** precise.

Under these limitations we hold the specifications in the work request to be reasonably precise in proving a colorable applicability of the government contractor defense. The plaintiff might show at trial that it would have been reasonable for the government to specify the exact

placement of the lines for the relocation. Likewise, the defendants might show that such a specification would have been unreasonably precise and that reasonable precision lay in the work request's determination of where the particular project was to be performed and for what purpose. Either way, we recognize that the defendants have a lower threshold to meet here than at trial. We find that they have done so by showing that the work request does address Pride's relocation of the power lines at the remodeling project. The first requirement of the test from *Boyle* is therefore met for the purposes of determining whether the defendants can raise a federal defense.

### b. *Conformity of Pride's work to government-approved specifications*

A defendant must also show that the work it performed as a government contractor conformed to the government-approved specifications. The defendants contend that the government's failure to raise an objection after the work's completion is proof of its conformity to specifications. They note that this circuit has previously found that the government's acceptance and use of a product manufactured by a contractor helped establish that the item conformed to specifications. *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 420 (5th Cir. 2001) (citing *Kerstetter v. Pacific Sci. Co.*, 210 F.3d, 431, 435 (5th Cir. 2000); *In Re Disaster at Ramstein Air Base, Germany*, 81 F.3d 570, 575 (5th Cir. 1996)). The Fifth Circuit has also found that the existence of a procedure for the government to inspect the work and certify its conformity through completion of a "Material Inspection Receiving Report" further established conformity. *Miller*, 275 F.3d at 420.

We find, however, that these cases all concerned movables of which the government took possession, perhaps inviting more opportunity to notice defects due to the proximity that usage would require. *Id.* Additionally, the report provided in *Miller* could be viewed as affirmative certification of the product's conformity. In contrast, the deficiency report process described here

notes no requirement of acceptance or inspection. Therefore we cannot view the lack of a deficiency report as evidence that the government inspected the project and found it acceptable.

However, we return once more to the admonition from *Willingham* that the defendants need not win their case here to show colorable applicability. We note that the work was performed on an Army base, providing the government with opportunity to inspect at will. We also view the fact that the government supplied some of the material to be used in the work as evidence of its interest. Finally, we observe that failure to conform to government standards is part of the plaintiff's allegations against Pride, and so this matter is one that must be proven at trial. Therefore we hold that the defendants have shown the colorable applicability of the second arm of the government contractor defense to their case.

### c. *Whether Pride warned the government of any known defects*

The final requirement of the government contractor defense is that the contractor warned the government of any defects it knew of in the work. *Boyle*, 487 U.S. at 512. The defendants note, correctly, that this provision only covers actual knowledge and not constructive knowledge. *Kerstetter*, 210 F.3d at 436 ("The government contractor defense does *not* require a contractor to warn the government of defects about which it only *should* have known.") (emphasis in original).

The plaintiff argues that Pride was negligent in its placement of the lines at the remodeling project, and that a failure to warn the Army of this negligent placement negates the government contractor defense. However, the plaintiff fails to show that Pride was aware of its alleged negligence and Pride makes no such admission. There appears to be no obstacle, then, to meeting the final requirement of *Boyle*. We hold therefore that the defendants have shown the colorable applicability of a federal defense to their claim, justifying federal officer removal jurisdiction.

### B. Federal Enclave Jurisdiction

A federal enclave is created when a state cedes land to the federal government for certain purposes, including "the erection of forts," thereby placing that land under the authority of Congress. U.S. CONST. art. I, § 8, cl. 17. The parties agree that the plaintiff's claims arose on Fort Polk, which is a federal enclave by virtue of being an installation of the United States Army. *Edmondson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 616 (1991). They also agree that federal enclave doctrine creates subject matter jurisdiction by generally calling for the application of federal law within in the enclave. *Mater v. Holley*, 200 F.2d 123, 123–24 (5th Cir. 1952).

As the Fifth Circuit noted in *Mater*, however, when land and legislative power are transferred from one sovereign to another, there must be no gap in laws protecting private rights. *Id.* at 124 (internal citations omitted). This means that the laws of the first sovereign at the time of transfer "continue in force until abrogated or altered" by legislative act of the new sovereign (unless they are inconsistent with the existing laws of the new sovereign, in which case preemption occurs). *Id.* Thus, for claims regarding personal rights arising from events on Fort Polk, we would normally apply Louisiana law in effect at the time the land was ceded to the federal government unless federal law preempts it. Additionally, there are exceptions to this rule that justify the application state law enacted post-cession or the application of state law despite subsequent federal preemption. *See Balderrama v. Pride Indus., Inc.*, 963 F.Supp.2d 646, 655 n. 3 (W.D. Tex. 2013). The plaintiff argues for two applicable to this case: personal injury claims and workers' compensation claims. It also contends that, under a view of concurrent state and federal jurisdiction arising from federal enclaves, there was no justification to remove the action.

### *1. Applicability and Effect of State Law Exceptions*

Congress has expressly authorized application of state law in actions arising on federal enclaves in two exceptions of note. Use of these exceptions, the plaintiff contends, bars a claim that this action arises under federal law and invokes federal question jurisdiction. We therefore analyze both exceptions and then look to their impact on jurisdiction.

#### *a. Workers' compensation exception and removability exemption*

Under 40 U.S.C. § 3172(a), states may apply their workers' compensation laws to land held by the federal government within that state. This exception deserves separate treatment from the personal injury/wrongful death exception discussed below because it does not merely invite concurrent jurisdiction. Rather, as the plaintiff contends, it makes the case specifically exempt from removal under 28 U.S.C. § 1445(c) even if federal question jurisdiction otherwise applies. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1118 (5th Cir. 1998).

We find that § 3172(a) has been used to justify application of current state workers' compensation law to private employers operating on federal enclaves. *Roelofs v. United States*, 501 F.2d 87, 93 (5th Cir. 1974). The defendants do not contest that Louisiana workers' compensation laws would likewise apply here. The larger question for us, then, is whether this application would invite removal exemption under § 1445(c).

Section 1445(c) provides that "a civil action in any state court arising under the workmen's compensation laws of such state may not be removed to any district court of the United States." 28 U.S.C. § 1445(c). As the plaintiff notes, the Fifth Circuit has called for the broad application of this statute. *Jones v. Roadway Express, Inc.*, 931 F.2d 1086, 1092 (5th Cir. 1991) (holding that an action for retaliatory discharge in anticipation of filing a workers' compensation claim could not be removed under § 1445(c)). However, this application is not limitless. For instance, the Fifth

Circuit refused to apply § 1445(c) to common law claims of good faith and fair dealing against a workers' compensation insurance carrier over its handling of claims. *Patin v. Allied Signal, Inc.*, 77 F.3d 782, 787 (5th Cir. 1996).

The Fifth Circuit has also called for interpretation of § 1445(c)'s "arising under" language "consistent with" the interpretation of 28 U.S.C. § 1331. *Patin*, 77 F.3d 782, 786 (5th Cir. 1996). The Supreme Court previously held that a claim arises under the law that creates the cause of action. *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). In the intervening years, however, the focus has expanded to whether a substantial federal question is raised. *See Superior Oil Co. v. Pioneer Corp.*, 706 F.2d 603, 605 (5th Cir. 1983). For § 1331 purposes, federal law "must be an element, and an essential one, of the . . . cause of action." *Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1178 (5th Cir. 1984) (quoting *Superior Oil Co.*, 706 F.2d at 605). Accordingly, the court refused to find that § 1331 was met when the federal law cited was "procedural only, not substantive." *Lowe*, 723 F.2d at 1179.

As the plaintiff observes, the statute under which it asserts its right is part of state workers' compensation law. LA. REV. STAT. 23:1101(a). However, defendants note that the Louisiana Supreme Court has specifically examined LA. REV. STAT. 23:1101 *et seq.* The court determined that, while the statute extends the right of action, it does not create an independent cause of action outside of existing tort law.[6] *Marquette Cas. Co. v. Brown*, 103 So.2d 269, 271 (La. 1958). Instead,

---

[6] "The question, then, is whether [R.S. 23:1101 *et seq.*] confer upon the employer a separate and independent cause of action . . . against the third person tortfeasor or whether there is but one cause of action, ex delicto, which the compensation paying employer or the injured employee is accorded the right to assert separately or jointly. Considering [these provisions], it seems plain that there is but one cause of action recognized for the recovery of damages resulting from a single tort. However, the right of redress against the tortfeasor has been extended by the provisions to the injured workman's employer . . . ." *Marquette Cas. Co.*, 103 So.2d at 271. Louisiana courts recognize a firm distinction between a right of action and a cause of action, as reflected in *Marquette*'s holding. *Coulon v. Gaylord Broadcasting*, 433 So.2d 429, 430 (La. Ct. App. 4th Cir. 1983), *writ denied*, 439 So.2d 1073 (La. 1983), *abrogated on other grounds by Gugliuzza v. KCMC, Inc.*, 593 So.2d 845, 846 (La. Ct. App. 2d Cir. 1992).

defendants argue that this action arises under Louisiana tort law because the plaintiff's burden of proof is centered in the alleged underlying negligence of the defendants.

The plaintiff refutes this contention, citing a Louisiana state court decision to show the limits imposed on its claim by LA. REV. STAT 23:1101. *Stafford v. Hearn Const. Co.*, 632 So.2d 775, 778 (La. Ct. App. 1993). It also references a California case in which the court held that a claim based in a statute's authorization of the employer's right of subrogation for workers' compensation payments was not removable under Section 1445(c). *Zurich v. Am. Ins. Co. v. Gen. Motors Corp.*, 242 F.Supp.2d 736, 737 (E.D. Cal. 2003). Finally, it criticizes the defendants' reliance on *Marquette*, claiming that Louisiana state court decisions lack persuasive value because federal law should control whether Section 1445(c) applies.

We first note that the limitations imposed by LA. REV. STAT 23:1101, as discussed by the court in *Stafford*, are entirely procedural. The court cited the workers' compensation laws at issue to determine that the workers' compensation insurer's right of intervention was not separate cause of action, but relied on state tort law to determine underlying questions of liability. *Stafford*, 632 So.2d at 777–779. We also distinguish *Zurich* from the case before us because the Eighth Circuit's test for Section 1445(c) allowed that a statute arose under workers' compensation laws when those laws created the **right of action**. *Id.* at 737–38 (citing *Humphrey v. Sequentia*, 58 F.3d 1238, 1246 (8th Cir. 1995)). As we have noted, the focus in the Fifth Circuit is different, drawing from Section 1331's attention to the **cause of action** and then whether a substantial question relating to that area of law is raised, a distinction that is clear within the state law we are applying. *See supra* note 6 and accompanying text.

Because the Louisiana courts have already held that LA. REV. STAT 23:1101 *et seq.* only extends right of action and not the cause of action, we find that the holding from *Zurich* has little persuasive value here.

Finally, we reject the plaintiff's contention that state court decisions lack persuasive value to us. We interpret both *Marquette* and *Stearn* in light of the Fifth Circuit decisions cited above while also recognizing the expertise a state court has in helping us determine the extent to which a piece of state legislation actually creates a new cause of action. *See, e.g.*, *Patin*, 77 F.3d at 788; *Spearman v. Exxon Coal USA, Inc.*, 16 F.3d 722, 724–25 (7th Cir. 1994) (both looking to state court decisions to settle whether state law created new causes of action in § 1445(c) analyses).

We are therefore persuaded by the defendants' reasoning. Our review of LA. REV. STAT 23:1101 *et seq.* shows us that the statute's impositions here, like the rejected application of federal law for § 1331 purposes in *Lowe*, are merely procedural. Our evaluation of the pleadings convinces us that the plaintiff's claims against the defendants actually arise under state tort law, which is not categorically barred from removal under any federal law. Louisiana's own evaluation of its workers' compensation laws makes it clear that they do not create a separate cause of action under which the plaintiff's claim could be said to arise. There is nothing else in the plaintiff's pleadings that raises a substantial question relating to workers' compensation. Accordingly, we find that the plaintiff's claims do not arise under Louisiana's workers' compensation laws and so Section 1445(c) presents no obstacle to removal.

### b. *Personal Injury/Wrongful Death Exception*

Section 5001 of Title 28, *United States Code*, provides a cause of action for wrongful deaths on federal enclaves, applying state law, and provides that state law governs other personal injury actions on federal enclaves. *E.g.*, *Vasina v. Grumman Corp.*, 644 F.2d 112, 116–17 (2d Cir.

1981); *Adams v. Alliant Techsystems, Inc.*, 218 F.Supp.2d 792, 795–96 (W.D. Va. 2002) (both applying Section 5001's predecessor, 16 U.S.C. § 457, to wrongful death and personal injury suits on military property, requiring application of surrounding state's substantive law). Here the defendants do not dispute that the current action is a wrongful death action and that state tort law will therefore apply. However, they disagree on the impact of this application on jurisdiction and the propriety of removal, discussed *infra*. We therefore consider how the presence of state law should affect this court's jurisdiction.

### c. *Impact of concurrent jurisdiction*

We accept that Louisiana's substantive law will govern the plaintiff's claims. We also observe that this circuit has already held that concurrent state and federal jurisdiction is created when federal law allows for the application of state law within a federal enclave. *Mater*, 200 F.2d at 124–25 (state laws applied within a federal enclave "remained operative as federal law by virtue of the sovereignty of the United States," resulting in concurrent jurisdiction). Therefore, contrary to the plaintiff's assertion, any state laws applied here would mark the existence of concurrent jurisdiction and not the destruction of federal question jurisdiction.

Defendants and plaintiff each claim support through the existence of concurrent jurisdiction. The defendants argue that concurrent jurisdiction does not justify a remand to state court because concurrent jurisdiction has no impact on this court's original jurisdiction. *Pace v. Hunt*, 847 F.Supp. 508, 509 (S.D. Miss. 1994); *Lanata v. Bellsouth Advert. & Publ. Corp.*, 2003 WL 22038561 *2 (E.D. La. 2003). The plaintiff draws our attention to *Gulf Offshore Co. v. Mobil Oil Corp.* 453 U.S. 473 (1981). *Gulf Offshore* involved a challenge to state court subject matter jurisdiction over a personal injury claim arising from an area of federal sovereignty under the Outer Continental Shelf Lands Act. *Id.* at 475–77. Finding that "[n]othing inherent in exclusive federal

sovereignty over a territory precludes a state court from entertaining a personal injury suit concerning events occurring in the territory and governed by federal law," the Supreme Court held that claims arising in the area were federal claims, but that concurrent jurisdiction existed because there was no express denial of state court jurisdiction or "clear incompatibility" between the federal claims and the state court. *Id.* at 481, 483–84; *see also Mendoza v. Neudorfer Engineers, Inc.*, 145 Wash.App. 146, 151–53 (Wash. Ct. App. 2008) (holding, under *Gulf Offshore* and *Mater*, that concurrent jurisdiction existed over a military base and did not bar the state court's ability to hear a personal injury claim).

But the cases cited by the plaintiff do not hold that federal subject matter jurisdiction is thereby destroyed. Indeed, state tort law that becomes operative as federal law on federal enclaves has regularly been used to justify removal under federal question jurisdiction.[7] *E.g.*, *Willis v. Craig*, 555 F.2d 724, 726 n. 4 (9th Cir. 1977) (per curiam); *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250–51 (9th Cir. 2006); *Akin v. Big Three Indus., Inc.*, 851 F.Supp. 819, 821–22 (E.D. Tex. 1994); *Federico v. Lincoln Mil. Housing*, 901 F.Supp.2d 654, 671–72 (E.D. Va. 2012).

We take it as evident, then, that a Louisiana state court would also have jurisdiction over the plaintiff's claims. However, the plaintiff cannot escape the fact that the federal enclave still grants this court federal question jurisdiction over the claim, by virtue of Louisiana tort law becoming operative as federal law within Fort Polk. Additionally, as noted above, the limited involvement of Louisiana workers' compensation law within the plaintiff's claims does not bar removal under § 1445(c). The application of state law here does not destroy federal question

---

[7] We note recent disagreement from District of Hawaii. *Ching v. Aila*, 2014 WL 4216051 at *4–*7 (D. Haw. 2014). However, the court in *Ching* distinguished its holding from *Mater* on the grounds that Hawaiian federal enclaves were granted "broad concurrent jurisdiction," and so "state law [applied] with no need to assimilate [it] into federal law." *Id.* at *6.

jurisdiction and so we hold that removal of the case was proper under federal enclave jurisdiction in addition to federal officer removal jurisdiction.

### III.
#### CONCLUSION

For the reasons stated above, the plaintiff's Motion to Remand [doc. 14] is hereby **DENIED**.

THUS DONE this 24th day of September, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE