RECEIVED
IN LAKE CHARLES, LA.

OCT 19 2016

TONY R. MOORE, CLERK
BY_____
         DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| LOUISIANA UNITED BUSINESS ASSOACITION CASUALTY INSURANCE CO. | * * * | CIVIL ACTION NO. 2:15-cv-01769 |
| Plaintiffs | * | JUDGE MINALDI |
| | * | |
| v. | * | |
| | * | MAGISTRATE JUDGE KAY |
| J&J MAINTENANCE, INC., et al., Defendants | | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM RULING

Before the court are three motions: a Motion for Summary Judgment (Rec. Doc. 52) filed by defendant, Entergy Louisiana LLC (Entergy), an Opposition (Rec. Doc. 58) by Louisiana United Business Association Casualty Insurance Co. (LUBA), and a Reply (Rec. Doc. 62) by Entergy; a Motion to Strike (Rec. Doc. 63) filed by Entergy, an Opposition (Rec. Doc. 66) by LUBA, and a Reply (Rec. Doc. 69) by Entergy; and a Motion for Partial Summary Judgment (Rec. Doc. 70) by LUBA, an Opposition (Rec. Doc. 75) by Entergy, and a Reply (Rec. Doc. 76) by LUBA.  The court heard oral arguments for the Motion to Strike (Rec. Doc. 63) on September 29, 2016. For the following reasons, the Entergy's Motion to Strike (Rec. Doc. 63) and Motion for Summary Judgment (Rec. Doc. 52) will be **GRANTED**, and LUBA's Motion for Partial Summary Judgment (Rec. Doc. 70) will be **DENIED**.

## FACTS & PROCEDURAL HISTORY

In January 2012, Jonathan West (West) died from electrocution after the lift he was operating came into contact with a power line owned by Entergy. The power line was located approximately 40 feet from the closest point of the south side of the building on which Mr. West was working and more than 24 feet above the ground. It was an uninsulated high voltage power

1

line that was "inverted,"[1] so that the uninsulated high voltage power line hung below the grounded power line.

At the time of the incident, Mr. West was an employee of The Migues Deloach Company (Deloach). J & J Maintenance, Inc. had subcontracted with Deloach to complete the concrete and roofing work for a dental clinic remodeling project on Fort Polk near the power line. On the day of the incident, Mr. West was instructed to peel plastic off metal trim, a task that typically did not require using a lift. Yet Mr. West used the lift, boomed it away from the building, and caught the power line.

In 2011 before beginning the remodeling project, J&J Maintenance, Inc. met with a representative of the U.S. Army Corps of Engineers because the U.S. Government was the then owner of the power line near the dental clinic. After the meeting, the U.S. Government and the operator, Pride Industries, moved the power line farther away from the building. On December 1, 2011, Entergy took over ownership of the power line "as is." Prior to taking ownership, Entergy assumed responsibility to inspect the power system and alert the U.S. Government of any hazards, and after taking ownership, Entergy assumed responsibility to address any safety concerns and ensure that the system met industry standards.[2] During the transition period before taking ownership, Entergy inventoried the equipment and brought any notable hazards to the attention of the government. Entergy did not consider the location or inversion of the power line to be a hazard during the initial inventory and maintains that it is not a hazard after the incident.

After Mr. West's death, LUBA paid death benefits to Mr. West's heirs. It filed this action in state court seeking compensation for the paid benefits from Entergy, Volvo Construction

---

[1] Entergy generally refers to the configuration as a "swapover" and contends that this was not an abnormal configuration. Opposition to LUBA's Motion for Partial Summary Judgment (Rec. Doc. 75), p. 3.

[2] The exact responsibilities that Entergy assumed are disputed between the parties. *See* Response to LUBA"s State of Material Facts (Rec. Doc. 75-1), para. 12-14.

Equipment Rents, Inc., unknown insurance companies, Pride Industries, and J & J Maintenance Inc. The action was removed to federal district court on May 27, 2015. A number of third party complaints and cross-claims have also been filed. Entergy filed its Motion for Summary Judgment (Rec. Doc. 52) arguing that LUBA could not show that Entergy was negligent or that its negligence was a contributing cause to Mr. West's death. In its opposition to the Motion for Summary Judgment, LUBA included an expert affidavit from Louis Braquet (Braquet) (Rec. Rec. 58-6). Entergy has moved to strike the affidavit of Mr. Braquet (Rec. Doc. 63) arguing that Mr. Braquet's conclusions are speculative and unfounded. LUBA then filed its own Motion for Partial Summary Judgment (Rec. Doc. 70) arguing that the evidence shows that Entergy's negligence was a contributing cause of Mr. West's death.

## LAW & ANALYSIS

### I.   Motion for Summary Judgment Standard

A grant of summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). "Under Rule 56, summary judgment must be entered against 'a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375–76 (5th Cir. 2002) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)).

When ruling on a motion for summary judgment, the district court draws all reasonable inferences in favor of the nonmoving party. *Coury v. Moss*, 529 F.3d 579, 584 (5th Cir. 2008).

3

However, in the absence of proof, the court will not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). The non-movant cannot satisfy its burden by raising "some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or by only a scintilla of the evidence." *Id.* at 1075. Additionally, "[t]he court will not weigh the evidence or evaluate the credibility of witnesses." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## II.   Motion to Strike Expert's Affidavit

The court first addresses Entergy's Motion to Strike LUBA's expert affidavit.[3] The district court may properly evaluate the admissibility of an expert's opinion in a motion for summary judgment. *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000). Under Federal Rule of Evidence 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The district court acts as a gatekeeper to ensure that expert testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). The testimony is reliable if "the reasoning or methodology underlying the testimony is ... valid."

---

[3] (Rec. Doc. 63). LUBA filed a response to the Motion to Strike one day late. However, the court does not find that the late filing prejudiced Entergy. Therefore, the court will consider LUBA's arguments in its Response (Rec. Doc. 66) and its arguments raised in the September 29, 2016 Hearing.

4

*Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 535 (5th Cir. 2013) (citing *Daubert*, 509 U.S. at 592–93).

The testimony is relevant if "the proponent …demonstrate[s] that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema*, Inc., 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir.1999)). Expert opinions are irrelevant if they "would not actually assist the [factfinder] in arriving at an intelligent and sound verdict." *Fair v. Allen*, 669 F.3d 601, 607 (5th Cir. 2012) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). Statements by an expert that "certain events or substances 'might' or 'could' have caused a specified result[] are of little help to a fact-finder and therefore should be excluded." *Wu v. Mississippi State Univ.*, No. 1:13-CV-00002-DMB, 2014 WL 5799972, at *12 (N.D. Miss. Nov. 7, 2014), aff'd sub nom. *Shu-Hui Wu v. Mississippi State Univ.*, 626 F. App'x 535 (5th Cir. 2015) (citing 6 Jones on Evidence § 42:32 (7th ed.)); *see also Bernhardt By & Through Bernhardt v. Richardson-Merrell, Inc.*, 723 F. Supp. 1188, 1192 (N.D. Miss. 1988).

> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it." See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995)[, on remand from *Daubert*, 509 U.S. 579.]

Fed. R. Evid. 702 advisory committee's note. On a motion for summary judgment if the court determines that the expert testimony is unreliable or irrelevant, it "may disregard that opinion in deciding whether a party has created a genuine issue of material fact." *Fair*, 669 F.3d at 607.

LUBA contended in its response and during the oral argument that the court should not apply *Daubert* because Mr. Braquet is relying on his experience and is not conducting scientific

5

tests. However, the court finds that *Daubert* is relevant because even though Mr. Braquet is relying on his experience in the field, "[t]he trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" See Fed. R. Evid. 702 advisory committee's note (citing *Daubert*, 43 F.3d at 1319 (9th Cir. 1995), on remand from *Daubert*, 509 U.S. 579). Even an expert relying on his years of experience must provide how his conclusions are based on his experience and the facts. *Id.*

Entergy argued in its Motion and during the oral argument that Mr. Braquet's statements regarding the placement of the electrical pole, the configuration of the electrical line, the possibility of replacing the line with a less dangerous low voltage line, and the causation of the incident are speculative and unsupported by evidence.[4] LUBA contended in its response and at oral argument that Mr. Braquet's opinions are based on evidentiary documents and his 30 years of experience working with energy, power, and utility operations as an engineer.[5] While the court has serious misgivings about the bases for some of Mr. Braquet's statements in the his affidavit, the court does not need to resolve which statements have an adequate basis because the court finds that Mr. Braquet's opinion would not assist "the [factfinder] in arriving at an intelligent and sound verdict." *See Fair*, 669 F.3d at 607 (citing *Viterbo*, 826 F.2d at 422).

In his affidavit, Mr. Braquet makes three general conclusions about Entergy's potential liability: (1) the failure to move the power line away from the construction site "could have caused and/or contributed to the accident;" (2) failure to substitute an insulated, lower voltage electrical line "could have caused and/or contributed to the accident;" and (3) failure correct the inversion of the high voltage uninsulated power line "could have caused and/or contributed to the

---

[4] Memo. for Motion to Strike (Rec. Doc. 63-1).
[5] Opposition to Motion to Strike (Rec. Doc. 66).

accident."[6] Speculation of what "could have" happened does not lead to the conclusion that these alleged failures were a contributing cause of the incident. *See Wu*, 2014 WL 5799972 at *12 (excluding an expert's testimony as too vague when the expert stated that causation was not improbable); *see also Bernhardt By & Through Bernhardt*, 723 F. Supp. at 1192.

As explained in further depth below, under Louisiana law, negligent conduct must be a cause-in-fact of the alleged injury, meaning that "but for" the defendant's conduct, the injury would not have occurred. *Rando v. Anco Insulations Inc.*, 2008-1163, pp. 31-32 (La. 5/22/09), 16 So. 3d 1065, 1088-89. Mr. Braquet's conclusions that certain conduct "could have caused and/or contributed" to the incident are too speculative. They do not establish that but for the conduct, the incident would not have occurred. Therefore, the court will **GRANT** Entergy's Motion to Strike (Rec. Doc. 63) because the conclusions do not aid the factfinder in determining the cause-in-fact of the incident.

### III. LUBA's Negligence Claim

Finally, the court addresses both parties Motions for Summary Judgment[7] regarding LUBA's negligence claim against Entergy. Under Louisiana law, negligence cases use a duty-risk analysis to determine liability. *Foley v. Entergy Louisiana, Inc.*, 2006-0983, p. 11 (La. 11/29/06), 946 So. 2d 144, 154.

> To establish the liability of an electric utility company using the duty-risk analysis, the plaintiff has the burden of proving: (1) that the defendant power company owed a duty to the plaintiff; (2) that the power company breached that duty; (3) that the power company's conduct was a cause-in-fact of the plaintiff's injuries; (4) that the power company's substandard conduct was a legal cause of plaintiff's injuries; and (5) that the plaintiff suffered actual damages. *Perkins v. Entergy Corporation*, 00–1372, 00–1387, 00–1440, p. 7 (La.3/23/01), 782 So.2d 606, 611

---

[6] Affidavit of Braquet (Rec. Doc. 58-6), para. 38-40.
[7] (Rec. Docs. 52, 70).

7

*Id.* "When multiple causes of injury are present, a defendant's conduct is a cause-in-fact if it is a substantial factor generating [the] plaintiff's harm." *Rando v. Anco Insulations Inc.*, 2008-1163, p. 31, 16 So. 3d at 1088 (citing *Quick v. Murphy Oil Co.*, 93–2267, pp. 9-10 (La. App. 4th Cir. 9/20/94), 643 So. 2d 1291, 1295, writ denied, 94-2583 (La. 1/6/95), 648 So.2d 923). "[N]egligent conduct is a substantial factor if the harm would not have occurred without the conduct, i.e., but for defendant's conduct, plaintiff would not have sustained injury." *Id.* at p. 32, 16 So. 3d at 1089.

LUBA argues that Entergy breached its duty to inspect the power system and to maintain a safe system, by not moving the power line and not curing the inversion.[8] Even if the court assumes that Entergy breached a duty, LUBA has not presented evidence that any alleged breach was a cause-in-fact of Mr. West's injuries. LUBA has not presented evidence that Mr. West would not have been harmed if Entergy had moved the line farther away from the building or if Entergy had corrected the inversion.[9] While LUBA made the broad statement in both its Opposition to Entergy's Motion for Summary Judgment and in its memorandum in support of its Motion for Partial Summary Judgment that "Entergy's negligent conduct was a substantial factor in bringing about West's death," it does not offer any evidentiary proof or further explain this broad conclusion.[10] Even though Entergy does not bear the burden of doing so, it presented evidence through an expert affidavit that even if Entergy had moved the line, the move may not have prevented the incident.[11] Because LUBA has failed to establish that any alleged breach by Entergy is a cause-in-fact of Mr. West's death, the court will **GRANT** Entergy's Motion for

---

[8] Opposition to Entergy's Motion for Summary Judgment (Rec. Doc. 58) p. 6; LUBA's Motion for Partial Summary Judgment (Rec. Doc. 70-1), pp. 8-9.
[9] As previously explained, the court is not considering the expert affidavit of Mr. Braquet, LUBA's expert, because his conclusions speculate to what "could have" contributed to Mr. West's death, which is not helpful in determining whether Entergy's alleged duty breaches were a cause-in-fact of Mr. West's death.
[10] Opposition to Entergy's Motion for Summary Judgment (Rec. Doc. 58), p. 7; LUBA's Motion for Partial Summary Judgment (Rec. Doc. 70-1), p. 9.
[11] Supp. Affidavit of Little (Rec. Doc. 62-1), para. 3.

Summary Judgment (Rec. Doc. 52) and **DENY** LUBA's Motion for Partial Summary Judgment (Rec. Doc. 70).

## CONCLUSION

Because the expert affidavit of Mr. Braquet contained vague conclusions of what "could have" contributed to Mr. West's death, the court finds that the affidavit is not helpful in determining Entergy's liability. Therefore, the court will **GRANT** Entergy's Motion to Strike (Rec. Doc. 63). Additionally, because LUBA has not established that Entergy's allegedly negligent actions were a cause-in-fact of Mr. West's death, the court will **GRANT** Entergy's Motion for Summary Judgment (Rec. Doc. 52) and **DENY** LUBA's Motion for Partial Summary Judgment (Rec. Doc. 70).

Lake Charles, Louisiana, this 19 day of Oct., 2016.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE