**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

LOUISIANA UNITED BUSINESS      CIVIL ACTION NO. 15-1769
ASSOCIATION CASUALTY
INSURANCE CO.

VERSUS      JUDGE S. MAURICE HICKS, JR.

J&J MAINTENANCE, INC., ET AL.      MAGISTRATE JUDGE KAY

## MEMORANDUM RULING

Before the Court are two motions: (1) Migues Deloach Company, LLC's ("Deloach") "Motion for Summary Judgment" (Record Document 151) and (2) J&J Maintenance, Inc.'s ("J&J") "Motion for Partial Summary Judgment" (Record Document 155), each seeking a determination of whether Deloach is liable to J&J for attorney's fees and costs incurred by J&J in defense of the underlying claims against it in this matter, as well as attorney's fees and costs incurred in pursuit of reimbursement of those fees against Deloach. For the reasons contained herein, Deloach's motion is **DENIED** and J&J's motion is **GRANTED IN PART** and **DENIED IN PART**.

## FACTUAL AND PROCEDURAL BACKGROUND

This matter arises out of an accident which occurred on January 24, 2012, wherein Jonathan West ("West"), an employee of Deloach, was electrocuted while transporting construction materials at a remodeling project at a dental clinic in Fort Polk. See Record Document 31-4. On the day of the accident, West was working with his supervisor, Mark Hale ("Hale"), installing metal finish work on the soffit of the clinic. See Record Document 155-4 at 41. Although instructed not to do so, West used a manlift, boomed it away from the building, and caught the power line. See Record Document 157-3 at 41.

J&J was the general contractor of the remodeling project, and Deloach, West's employer, was operating pursuant to a Subcontract Agreement (the "Subcontract") under which Deloach was due to supply the earthwork foundation, steel supports, and other items for the project. <u>See</u> Record Document 137-1. The Subcontract contained the following provisions, in pertinent part:

> 10.(a) To the fullest extent permitted by law, subcontractor (Deloach) shall unconditionally indemnify, defend (with counsel selected by contractor (J&J)) and hold harmless owner, contractor, architect and/or engineer and their subconsultants and all of their affiliates, parents, subsidiaries, officers, directors, employees, successors and assigns (all of which are hereinafter collectively referred to as "indemnitites"), from and against all claims, damages, losses, costs and expenses, including but not limited to attorneys' fees and expenses of dispute resolution (collectively, "indemnified claims") arising out of or resulting from the performance of subcontractor's work, acts or omissions of subcontractor, negligence, breach of contract and/or breach of warranty by subcontractor, even though such damages are caused in part by the negligence (whether sole, joint or concurrent), strict liability or other legal fault of the contractor of any other indemnitee … Nothwithstanding the foregoing, the indemnification obligation shall be limited to the extent that the subcontractor's indemnification of the indemnitee for the indemnitee's own negligence is specifically prohibited by applicable laws for a particular type of project.

> 20. In the event Contractor (J&J) employs an attorney to enforce any of the provisions hereof, or to protect its interest in any matter arising under this Agreement, or to collect damages for breach of this Agreement, or to prosecute or defend any suit resulting from this Agreement, or to recover on the surety bond given by Subcontractor under this Agreement, Subcontractor (Deloach) and his surety, jointly and severally, agree to pay Contractor all costs, charges, expenses and attorneys' fees expended or incurred therein …

<u>Id</u>.

Following the accident, Louisiana United Business Association Casualty Insurance Company ("LUBACI") paid workers' compensation death benefits to West's heirs. LUBACI then filed suit to recoup those benefits, asserting it was entitled to reimbursement because the accident was caused by the negligence of several defendants, including J&J,

Entergy Louisiana, LLC ("Entergy"), and Volvo Construction Equipment Rents, Inc. ("Volvo"). <u>See</u> Record Document 31-4.

On December 26, 2012, J&J filed its first Third-Party Demand against Deloach alleging that J&J and Deloach entered into a subcontract to perform several aspects of the remodeling project. <u>See</u> Record Document 151-1. J&J alleged under the Subcontract that Deloach agreed to defend and indemnify J&J against any damages arising out of the performance of Deloach's work. <u>See id</u>. Deloach filed an Exception of Prematurity regarding these defense and indemnity claims, which was sustained by the 30th Judicial District Court, Vernon Parish, on September 3, 2013. <u>See</u> Record Document 137. Additionally, J&J was named as a cross-defendant on a related claim in Entergy's cross-claim filed on March 26, 2013. <u>See</u> Record Document 151-2. Subsequent to this cross-claim, J&J filed a First Supplemental and Amending Third-Party Demand against Deloach, asserting that Deloach was liable for defense and indemnification against Entergy's claims as well. <u>See</u> Record Document 151-3.

After J&J filed an Exception of No Right of Action asserting Louisiana's workers' compensation immunity under La. R.S. 23:1032 ("LWCA immunity"), the claims presented by LUBACI against J&J were dismissed in a Consent Judgment signed on February 24, 2014. <u>See</u> Record Document 155-6. On May 27, 2015, this case was removed to this Court pursuant to 28 U.S.C. § 1331. <u>See</u> Record Document 1. On May 19, 2017, J&J filed its Cross-Claim and Renewed Third-Party Demand against Deloach. <u>See</u> Record Document 137. Entergy's Cross-Claim against J&J was dismissed via a settlement

agreement procured by Deloach on November 13, 2017.[1] Thus, the only remaining claim at issue in this matter is J&J's claims against Deloach for the costs of defense, including attorneys' fees incurred in defending against claims brought by LUBACI and Entergy, as well as attorneys' fees and costs incurred in prosecuting this claim against Deloach.

On December 19, 2017, Deloach filed its Motion for Summary Judgment on J&J's cross-claims. See Record Document 151. J&J filed its opposition on December 29, 2017, to which Deloach replied on January 5, 2017. See Record Documents 157 and 158. The Court allowed J&J to file a sur-reply, which it did so on January 17, 2018. See Record Document 164. In addition to its opposition, J&J filed its own Motion for Partial Summary Judgment on December 29, 2017. See Record Document 155. Deloach opposed the motion on January 12, 2018, and J&J replied on January 18, 2018. See Record Document 160 and 161. Deloach also filed a sur-reply on January 22, 2018. See Record Document 169. The issues have been briefed extensively by the parties; therefore, the matter is ripe for decision.

## LAW AND ANALYSIS

### I.    Summary Judgment Standard

Rule 56 of the F.R.C.P. governs summary judgment. This rule provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a). Also, "a party asserting that a fact cannot be or is genuinely disputed must support the motion by citing to particular parts of materials in the record, including ... affidavits ...

---

[1] Entergy released its claims in exchange for payment issued by LUBACI, the workers' compensation insurer of Deloach. Deloach submits that the terms of the settlement agreement are confidential. See Record Document 160 at 7.

or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." F.R.C.P. 56(c)(1)(A) and (B). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... grant summary judgment." F.R.C.P. 56(e)(3).

In a summary judgment motion, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings ... [and] affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations and citations omitted). If the movant meets this initial burden, then the non-movant has the burden of going beyond the pleadings and designating specific facts that prove that a genuine issue of material fact exists. See Celotex, 477 U.S. at 325, 106 S. Ct. at 2554; see Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). A non-movant, however, cannot meet the burden of proving that a genuine issue of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little, 37 F.3d at 1075.

Additionally, in deciding a summary judgment motion, courts "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is when both parties have submitted evidence of contradictory facts." Id. Courts "do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Id.

## II.    Analysis

### A.    Timeliness

Deloach argues J&J's motion for partial summary judgment is untimely; therefore, the Court should dismiss it. See Record Document 160 at 4. Conversely, J&J argues its motion is a motion for "partial summary judgment" and is beyond the scope of the dispositive motion deadline as set forth in the Court's Scheduling Order. See Record Document 161. J&J's argument is incorrect. First, a "dispositive motion" includes a motion that, if granted, would result in the determination of a particular claim on the merits. See Tripoli Rocketry Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 698 F.Supp.2d 168, 173 (D.D.C. 2010). J&J's labeling of its motion as one for "partial summary judgment" does not defeat what the motion seeks – a determination of whether Deloach is liable for the costs of defense, including attorneys' fees incurred in defending against claims of LUBACI and Entergy, as well as attorneys' fees and costs incurred in J&J's prosecution of this claim against Deloach. Additionally, courts have traditionally treated motions for "partial summary judgment" as dispositive motions. See Geiserman v. MacDonald, 893 F.2d 787, 790 (5th Cir. 1990); Arnold v. Nat'l Cas. Co., 2014 WL 50832, *2 (W.D. La. 2014); S. Filter Media, LLC v. Halter, 2014 WL 4278788, *4 (M.D. La. 2014); Pratt Paper (LA), LLC v. JLM Advanced Tech. Servs., Inc., 2016 WL 5854235, *2 (W.D. La. 2016); Hinton v. Pike Cty., 2017 WL 2378361, *2 (S.D. Miss. 2017). Accordingly, J&J's "motion for partial summary judgment" is considered a dispositive motion.

Per the Court's Scheduling Order, all dispositive motions were due ninety (90) days before trial. See Record Document 136 at 1. With a trial date of March 19, 2018, this

made all dispositive motions due on December 19, 2017. <u>See</u> Record Document 135. J&J filed its Motion for Partial Summary Judgment on December 29, 2017, ten (10) days after the deadline. <u>See</u> Record Document 155. Therefore, J&J's motion is considered untimely. However, under the circumstances in the instant matter, the Court does not believe dismissal would be proper. J&J's motion seeks a ruling on the same legal question posed in Deloach's motion – whether Deloach is liable for the costs of defense incurred in defending and prosecuting claims arising from the subcontract – and there are no facts in dispute between the parties. While J&J's motion was filed late, the Court finds that considering the motion will not unduly prejudice Deloach and will allow the Court to render judgment on a purely legal question without requiring this issue to go to trial. <u>See</u> <u>Pratt Paper (LA), LLC v. JLM Advanced Tech. Servs., Inc.</u>, 2016 WL 5854235, *2 (W.D. La. 2016)</u> ("The decision to permit an untimely motion is ultimately at the judge's discretion.) (<u>citing</u> <u>S&W Enters., L.L.C. v. Southtrust Bank of Ala.</u>, 315 F.3d 533, 536-37 (5th Cir. 2003)). Therefore, the Court will consider J&J's Motion for Partial Summary Judgment despite its untimely filing.[2]

## B. Interpretation of the Subcontract's Indemnity Provision

In its motion for summary judgment, Deloach argues that the Subcontract limits reimbursement of defense costs to situations of negligence or breach committed only by Deloach. <u>See</u> Record Document 151-6 at 6-7. Conversely, J&J asserts Deloach's indemnification obligations are triggered not just by its own negligence, but also by any claims "arising out of or resulting from the performance of [Deloach's] work." Record Document 157 at 4. In its Reply, Deloach argues that J&J has not shown the "connexity"

---

[2] Counsel for J&J is cautioned that, in the future, they should move for an extension of the dispositive motion deadline prior to the expiration of the deadline.

between the accident and the work to trigger the indemnity provision.[3] <u>See</u> Record Document 158 at 3-6.

Under Louisiana law, the language in an indemnity agreement dictates the obligations of the parties. <u>See</u> <u>Bollinger Marine Fabricators, LLC v. Marine Travelift, Inc.</u>, 2015 WL 1638115, *4 (E.D. La. 2015), <u>citing</u> <u>Kinsinger v. Taco Tico, Inc.</u>, 861 So.2d 669, 671 (La. App. 5 Cir. 2003). "[I]ndemnity provisions are construed in accordance with general rules governing contract interpretation. When the terms of a contract are unambiguous and lead to no absurd consequences, [courts] interpret them as a matter of law." <u>Id.</u>, <u>quoting</u> <u>Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co.</u>, 89 F.3d 243, 246 (5th Cir. 1996) (internal citations omitted). While a contract of indemnity whereby an indemnitee is indemnified against the consequences of its own negligence is strictly construed, such contracts are nevertheless enforceable. <u>See</u> <u>Berry v. Orleans Par. Sch. Bd.</u>, 2001-3283 (La. 6/21/02), 830 So. 2d 283, 286.

The pertinent provision provides as follows:

10.(a) To the fullest extent permitted by law, subcontractor (Deloach) shall unconditionally indemnify, defend (with counsel selected by contractor (J&J) and hold harmless owner, contractor, architect and/or engineer and their subconsultants and all of their affiliates, parents, subsidiaries, officers, directors, employees, successors and assigns (all of which are hereinafter collectively referred to as "indemnitites"), from and against all claims, damages, losses, costs and expenses, including but not limited to attorneys' fees and expenses of dispute resolution (collectively, "indemnified claims") *arising out of or resulting from the performance of subcontractor's work, acts or omissions of subcontractor, negligence, breach of contract and/or breach of warranty by subcontractor, even though such damages are caused in part by the negligence (whether sole, joint or concurrent), strict liability or other legal fault of the contractor of any other indemnitee....*

Record Document 137-1 (emphasis added).

---

[3] This same argument is presented in Deloach's opposition to J&J's motion for summary judgment. <u>See</u> Record Document 160 at 8-11.

Under this provision, Deloach agreed to unconditionally defend and indemnify and hold J&J harmless from any and all claims "arising out of or resulting from the performance of (Deloach's) work" even though "such damages are caused by the negligence … of (J&J)." Id. The unambiguous language of the contract provides that Deloach's indemnification obligation is triggered not just by its own acts of negligence, but also by any claims "arising out of out or resulting from the performance of (Deloach's) work."[4] Therefore, the indemnity provision will be triggered unless Deloach can show that the underlying accident did not "arise out of" or "result from" Deloach's "work."

The Louisiana Supreme Court has held such "arising out of" language requires "a connexity similar to that required for determining cause-in-fact: Would the particular injury have occurred but for the performance of work under the contract?" Perkins v. Rubicon, Inc., 563 So.2d 258, 259 (La. 1990); see also Berry v. Orleans Par. Sch. Bd., 2001-3283 (La. 6/21/02), 830 So.2d 283, 287. Deloach argues the evidence shows there was no such connexity; however, it is clear that the underlying accident, West's electrocution, arose out of Deloach's work under the Subcontract.

According to the "Accident Report," West was "working" with his supervisor, Hale, installing metal finish work on the soffit of the dental clinic when he was electrocuted while operating a manlift. See Record Document 155-4 at 41. Although West was instructed to

---

[4] Deloach's cited case, Ponder v. SDT Waste & Debris Services, LLC, 2015-1656 (La. App. 1 Cir. 8/16/17) 2017 WL 3498159, is inapplicable to the instant matter. The indemnity provision in Ponder made no reference to indemnification for an indemnitee's own negligence, unlike the instant case. See id. at *1. The court expressly stated, "A contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from his own negligence unless such an intention is expressed in unequivocal terms." Id. at *3, citing Berry v. Orleans Parish School Board, 2001–3283 (La. 6/21/02), 830 So.2d 283, 285; Barnett v. American Construction Hoist, Inc., 2011–1261 (La. App. 1st Cir. 2/10/12), 91 So.3d 345, 349; Arnold v. Stupp Corporation, 205 So.2d 797, 799 (La. App. 1st Cir. 1967), writ not considered, 251 La. 936, 207 So.2d 540 (1968). Such an intention was expressed in unequivocal terms in the Subcontract, therefore, the Court will not analyze Ponder any further.

go to the ground and remove the plastic covering some trim, his work involved "installing metal finish work." See id. When West was electrocuted, he was transporting pieces of metal trim, via the manlift, to be installed. Therefore, the Court finds the required connexity between West's death and Deloach's work, *i.e.*, installing metal finish work. But for Deloach's performance of work under the contract (installing soffit panels), West's death would not have occurred. The Court's conclusion that such connexity exists is strengthened by the fact that when West was electrocuted on the lift, "several pieces of metal trim [were] lying across the bucket guard rails." Id.

Deloach argues that West's accident had no connexity to Deloach's work, since the work "required the workers to carry by hand soffit panels up a scaffold," and West "was never instructed to use the lift." Record Document 158 at 5. However, Deloach's argument as to how West was attempting to perform part of Deloach's work, *i.e.*, the use of a manlift as opposed to carrying up soffit panels up a ladder, does not change the fact that he was doing Deloach's work. Additionally, Deloach fails to cite any legal authority to support its position. Deloach's citation to Spencer v. Chevron Corporation, 216-0174 (La. App. 4 Cir. 9/28/16), 202 So.3d 1055, 1056, is misguided. In that case, employees of a subcontractor were injured while sleeping near the work site rather than while they were actually performing the subcontractor's work. See id. Accordingly, Spencer is inapplicable to the facts of the instant matter.

The Subcontract expressly provides that Deloach's indemnification obligations is triggered not just by its own negligence, but also by any claims "arising out of or resulting from the performance of [Deloach's] work." The Court finds sufficient connexity between West's accident and Deloach's work. Therefore, the indemnity provision is triggered and

J&J would be entitled to entitled to indemnity from Deloach for J&J's costs of defense and expenses if the Court need not adjudicate fault on behalf of J&J, discussed infra.

## C. Adjudication of J&J's Fault

The main issue in this matter is whether a determination of fault on the part of J&J[5] is required before the Subcontract's indemnity provision becomes enforceable. Deloach argues without such a determination, J&J cannot gain reimbursement. See Record Document 160 at 4. Pertaining to J&J's fault regarding LUBACI's negligence claims, J&J argues it is not premature for the Court to make such a finding, pointing out the state court has dismissed, via consent judgment, LUBACI's claims against J&J as barred by LWCA immunity, and such immunity "extinguishes any factually possible cause of action and, therefore, forecloses any possible finding of negligence" against J&J. Record Document 155-1 at 15. Thus, J&J argues this Court has not, and will not, reach the issue of its own negligence and, therefore, J&J's claims for indemnity against Deloach are not invalidated by La. R.S. 9:2780.1. As for J&J's fault as it relates to Entergy's claim, J&J suggests the Court's denial of Entergy's motion for summary judgment "reveals that, as a matter of law, J&J was not 'negligent' or at fault." Id. Deloach takes the position that because J&J has not been found to be free from fault or negligence regarding either LUBACI or Entergy's claims, as required by La. R.S. 9:2780.1, it would be premature for the Court to enforce the indemnity provision of the subcontract. See Record Document 160 at 4.

The indemnity provision of the Subcontract, in accord with La. R.S. 9:2780.1,[6] provides:

---

[5] J&J defended two claims in this matter: (1) a negligence claim asserted by LUBACI and (2) a cross-claim asserted by Entergy for J&J's alleged violation of the Overhead Powerline Safety Act ("OPLSA"), La. R.S. 45:141, et. seq.

[6] The pertinent provision of La. R.S. 9:2780.1 states:

> 10.(a) … Notwithstanding the foregoing, the indemnification obligation shall be limited to the extent that the subcontractor's indemnification of the indemnitee for the indemnitee's own negligence is specifically prohibited by applicable laws for a particular type of project.

Record Document 137-1. Under the statute, any agreement whereby Deloach provided defense or indemnity against loss or damage resulting from the negligence of J&J is null, void, and unenforceable. Although courts have not addressed La. R.S. 9:2780.1 as it pertains to the requirement of the finding of negligence, courts have analyzed an almost indistinguishable statute, the Louisiana Oilfield Indemnity Act ("LOIA"), La. R.S. 9:2780.[7] The Fifth Circuit has interpreted this provision of the LOIA as follows:

> *After trial on the merits*, if the indemnitee is found free from fault, the Act does not prohibit the indemnitee from recovering its cost of defense. Whether the injury is found to have resulted in whole or in part from the fault of the indemnitor does not affect the indemnitee's right to recover its cost of defense provided it is free from fault.

<u>Meloy v. Conoco, Inc.</u>, 817 F.2d 275, 280 (5th Cir.1987) (emphasis added). Since <u>Meloy</u>, the Fifth Circuit and two of the five Louisiana appellate courts have taken different positions on the interpretation of the provision of the LOIA (indistinguishable from La. R.S.

---

B.     Notwithstanding any provision of law to the contrary and except as otherwise provided in this Section, any provision, clause, covenant, or agreement contained in, collateral to, or affecting a motor carrier transportation contract or construction contract which purports to indemnify, defend, or hold harmless, or has the effect of indemnifying, defending, or holding harmless, the indemnitee from or against any liability for loss or damage resulting from the negligence or intentional acts or omissions of the indemnitee, an agent or employee of the indemnitee, or a third party over which the indemnitor has no control is contrary to the public policy of this state and is null, void, and unenforceable.

[7] The relevant provision of the LOIA states as follows:

B.     Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

9:2780.1). J&J urges the Court to follow Fifth Circuit jurisprudence, stating Hefren v. Murphy Expl. & Prod. Co., USA, 34 F.Supp.3d 651, (W.D. La. 2014), aff'd, 647 F.Appx. 301 (5th Cir. 2016), "is almost entirely on point." Record Document 155-1 at 13. Conversely, Deloach argues for the Court to adopt the differing Louisiana appellate decisions and attempts to distinguish Hefren and other federal cases. See Record Document 160 at 4-7. After a thorough review of the cited cases and the arguments presented by each party, the Court agrees with J&J and follows the reasoning of Judge Doherty in Hefren.

In Hefren, the plaintiff filed suit against Murphy Exploration & Production Company, USA ("Murphy") and McDermott, Inc. ("McDermott") for personal injuries under the Longshore and Harbor Workers' Compensation Act ("LHWCA"). See Hefren, 647 Fed.Appx. at 303. McDermott moved for summary judgment, arguing that Hefren's claims against it were barred by a Louisiana statute of peremption that extinguished claims regarding deficiencies in the design or construction of immovable property brought five years after the property was accepted by the owner. See id. at 303-04. The district court granted McDermott's motion for summary judgment and dismissed Hefren's claims against McDermott with prejudice. See id. at 304. Subsequently, McDermott moved for partial summary judgment against Murphy seeking indemnification for the costs, expenses, and attorney's fees it incurred in defending itself from Hefren's suit. See id. McDermott argued that, because Hefren's claims had been dismissed with prejudice, the suit had been decided in its favor and it was entitled to indemnification under the terms of the contract's indemnification provision. See id.

Before reaching her conclusion, Judge Doherty analyzed the two legal frameworks instituted by the Fifth Circuit to address the instant issue. See Hefren, 34 F.Supp.3d at 657-60. First, Judge Doherty analyzed the Fifth Circuit decision in Melancon v. Amoco Prod. Co., 834 F.2d 1238 (5th Cir. 1988), in which the court held that where the determination of the indemnitee's negligence was barred by LHWCA immunity, the indemnitee was entitled to indemnification for the costs of defense without an affirmative finding of the indemnitee's freedom of fault. See Hefren, 34 F.Supp.3d at 657. The Fifth Circuit in Melancon reasoned:

> In the case at bar, the Melancons alleged that the negligence and/or legal fault of the indemnitee, Amoco, caused Mr. Melancon's injuries. However, the Louisiana Supreme Court has held after certification from this Court that under the Louisiana Oilfield Indemnity Act "[t]he allegations of the plaintiff's suit against the indemnitee are irrelevant to the indemnitor's obligation to pay. Rather it is the terms of the indemnity agreement which govern the obligations of the parties." Meloy v. Conoco, Inc., 817 F.2d 275, 280 (5th Cir.1987). Here there exists no holding that Amoco was negligent or at fault for Mr. Melancon's injuries. *The case never reached the issue of Amoco's negligence because of the LHWCA's bar. For that reason Amoco is entitled to indemnity from Beraud for the costs of its defense.* Provision 10 of the Amoco–Beraud contract so provides, and the Louisiana Oilfield Indemnity Act does not apply absent a finding of negligence or fault against Amoco.

834 F.2d at 1248 (emphasis added).

Next, Judge Doherty addressed the second line of cases, beginning with Tanksley v. Gulf Oil Corp., 848 F.2d 515 (5th Cir.1988). See Hefren, 34 F.Supp.3d at 657-58. In Tanksley, the Fifth Circuit held an oil company that settled with the plaintiff was barred by the LOIA from pursuing the contractor for indemnity because the oil company, by choosing to settle with the plaintiff, voluntarily foreclosed determination of its negligence or fault. In so ruling, the Fifth Circuit explained:

> *The essential difference between the factual scenario in Melancon and that here presented relates to the legal availability of a determination of the*

*negligence or fault of the indemnitee.* Once the court decided that Melancon was an Amoco borrowed employee, the Longshore and Harbor Workers' Act proscribed any judicial inquiry into Amoco's fault or negligence. Thus, as a matter of law, there could never be a "trial on the merits" to determine whether Amoco was "free from fault and thus outside the scope of the [Louisiana Oilfield Indemnity] Act." Meloy, 504 So.2d at 839. In that setting, we concluded that the Oilfield Indemnity Act did not annul the indemnity provision and that Amoco was entitled to recover its costs of defense of the tort suit brought by Melancon, and the costs it incurred in pressing its indemnification demands. 834 F.2d at 1248.

*In the case at bar, a trial on the merits to determine Chevron's fault or negligence was not only legally possible, it was imminent and was foreclosed only by the compromise settlement with Tanksley.* The parties undoubtedly reached this settlement after a careful weighing of all relevant factors and risks. For reasons it deemed sufficient, Chevron opted to forego a trial at which it would either have been found liable or exonerated. The appeal of the certainty of settlement overrode the contending appeal of the uncertainty of trial. As a consequence, because of Chevron's choice, there will be no trial on the merits of Tanksley's claims to determine whether Chevron was "free from fault and thus outside the scope of the Act." *Absent such a finding, or a legal bar preventing the finding, as in Melancon, we must conclude that the Oilfield Indemnity Act nullifies, in this instance, the indemnity agreement between Chevron and SEE.*

Tanksley, 848 F.2d at 517-18 (emphasis added).

Judge Doherty noted the rejection of Tanksley by two of the five Louisiana appellate courts in Ridings v. Danos & Curole Marine Contractors, Inc., 723 So.2d 979 (La. App. 4 Cir. 1998) and Phillips Petroleum Co. v. Liberty Serv., Inc., 657 So.2d 405 (La. App. 3 Cir. 1995). See Hefren, 34 F.Supp.3d at 658. In Ridings, the Louisiana Fourth Circuit Court of Appeals challenged Tanksley, stating "[w]hether the indemnitee was negligent or at fault (strict liability) in causing injury to the original plaintiff can be determined at trial between the indemnitee and the indemnitor even after the indemnitee has settled with the original plaintiff." 723 So.2d at 983 n. 2. Similarly, in Phillips, the Louisiana Third Circuit Court of Appeals held the LOIA does not prevent "one seeking indemnification from proving freedom from 'negligence or fault (strict liability)' in an action

separate from the original litigation raising that issue." 657 So.2d at 409. Thus, there is a distinction between the Fifth Circuit and two Louisiana appellate courts on an issue of Louisiana law. The Louisiana Supreme Court has yet to address the Tanksley decision, but in dicta has stated that it finds logic in both the Tanksley conclusion, as well as that in Ridings and Phillips. See Fontenot v. Chevron USA, Inc., 676 So.2d 557, 563 n. 7 (La. 1996).

Judge Doherty concluded that peremption, like LHWCA immunity, was a legal bar to reaching the issue of negligence in the claims asserted by plaintiff and granted McDermott's motion for partial summary judgment on the issue of attorneys' fees. See Hefren, 34 F.Supp.3d at 659-60. The court found that peremption was more akin to the legal bar in Melancon (LHWCA immunity), and distinguished Ridings and Phillips since those cases dealt with a settlement of a claim. See id. at 660. Accordingly, the court granted McDermott's motion for partial summary judgment on the issue of attorneys' fees. On appeal, the Fifth Circuit affirmed. See Hefren, 647 F.Appx. at 306.

Deloach urges the Court to adopt the reasoning of the Louisiana appellate courts, arguing its duty to defend must be deferred until liability is determined. See Record Document 160 at 5-6. However, Deloach does not address Judge Doherty's analysis, nor that of the Fifth Circuit in its opinion affirming her decision. In fact, Judge Doherty specifically distinguished Ridings and Phillips – cases that involved settlement of claims – from cases involving legal bars, as is the case here. See Hefren, 647 F.Supp.3d at 661.

Deloach next argues that Melancon and Hefren are inapposite because this matter involves the application of LWCA immunity and Louisiana law. See Record Document 160 at 6. However, the immunities provided by the LHWCA and LWCA are virtually the

same. The LHWCA is a federal workers' compensation scheme designed to provide exclusive remedies for longshoremen and harbor workers that are injured in the course of employment. <u>See</u> 33 U.S.C. § 902(2)-(3). The compensation is designed to be paid regardless of fault, and employers are liable exclusively for compensation under Section 904 of the LHWCA and all other liability for injury is precluded. <u>See</u> 33 U.S.C. §§ 904(a) and 905(a). The LWCA provides the exclusive remedy for an employee injured by the negligent acts of his or her co-employees or employer when those injuries arise out of and in the course of employment. <u>See</u> La. R.S. §§ 23:1031 and 23:1032. Deloach's argument is unavailing.

Lastly, Deloach argues J&J's fault must be determined pursuant to La. Civ. Code art. 2323.[8] <u>See</u> Record Document 160 at 6. This argument is also unavailing. Deloach's position would be more persuasive if LUBACI's (the original plaintiff) negligence claims against the other defendants (Entergy and Volvo) were still pending. However, all of LUBACI's claims have been dismissed without an adjudication of fault. <u>See</u> Record Documents 15-4 (J&J); 43 (Volvo); 93 (Entergy). Given the facts of this matter and following Fifth Circuit jurisprudence, the Court does not find it appropriate to determine J&J's fault after the only claims of negligence alleged against it were dismissed because of a legal bar – LWCA immunity. <u>See</u> <u>Hefren</u>, 34 F. Supp. 3d at 660, n.7 (finding the dismissal of the only party asserting negligence claims prevented "any possible finding of

---

[8] La. Civ. Code art. 2323 provides, in pertinent part:

A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.

negligence against McDermott"). Accordingly, The Court will follow <u>Hefren</u> in its analysis of J&J's fault regarding both LUBACI's negligence claim and Entergy's cross-claim.

### i. LUBACI's Negligence Claims Against J&J

Here, LUBACI's claims never reached the issue of J&J's negligence because LUBACI's claims against J&J were dismissed pursuant to LWCA immunity. Thus, as a matter of law, there could never be a "trial on the merits" to determine whether J&J was "free from fault" and thus outside the scope of La. R.S. 9:2780.1. The LWCA's legal bar is nearly identical to the LHWCA's bar in <u>Melancon</u>, discussed <u>supra</u>. Therefore, as with the legal bar of the LHWCA in <u>Melancon</u> and the legal bar of peremption in <u>Hefren</u>, the Court could not have reached the issue of negligence here. Accordingly, the Court's failure to find J&J free from fault does not bar J&J's right to indemnity as it pertains to J&J's claims against Deloach for the costs of defense, including attorneys' fees, incurred in defending against claims of LUBACI.

### ii. Entergy's Cross-Claims Against J&J

J&J's claims against Deloach for the costs of defense incurred in defending against claims of Entergy do not enjoy a smiliar fate. Entergy's claims were not dismissed pursuant to a legal bar, but rather a settlement agreement. Accordingly, the Court finds <u>Tanksley</u> applicable in this instance.[9] Therefore, because J&J settled Entergy's claims

---

[9] Since Entergy's claims were dismissed by a settlement agreement, the Court acknowledges the state appellate decisions of <u>Ridings</u> and <u>Phillips</u> could be applicable. However, this is a federal court; therefore, we are bound by jurisprudence set forth by the Fifth Circuit. Accordingly, the Court must apply <u>Tanksley</u> in its analysis. As the Fifth Circuit stated in <u>American Home Assur. Co. v. Chevron, USA, Inc.</u>, 400 F.3d 265, n. 15 (5th Cir. 2005), "[W]e should not disregard our own prior precedent on the basis of subsequent intermediate state appellate court precedent unless such precedent comprises unanimous or near-unanimous holdings from several-preferably a majority-of the intermediate appellate courts of the state in question." Only two of the five Louisiana appellate courts have disagreed with <u>Tanksley</u> and the Louisiana Supreme Court, while noting the separation, has not taken a position. Accordingly, the Court will not apply <u>Ridings</u> and <u>Phillips</u> in its analysis.

without a determination of fault, it is precluded by La. R.S. 9:2780.1 from seeking indemnity from its indemnitor, Deloach.

J&J argues that a determination of its freedom of fault was determined by the Court when it denied Entergy's motion for summary judgment. <u>See</u> Record Document 155-1 at 15. J&J concedes that the Court's ruling was merely a denial of a motion for summary judgment by Entergy and not an affirmative grant of summary judgment; however, it suggests a "cursory review" of the Court's ruling "reveals that, as a matter of law, J&J was not negligent or at fault with respect to the OPLSA.[10] <u>Id</u>. In its ruling, the Court stated, "Entergy fails to show how J&J fell short of its OPLSA obligation …." Record Document 146 at 4-5. However, this argument is unavailing because the recognition that Entergy had failed to establish J&J's fault for purposes of Entergy's motion is not tantamount to the Court finding that J&J had no responsibility for the accident in question. When the Court denied Entergy's motion for summary judgment, it simply found that Entergy failed to carry its burden to show it was entitled to a judgment as a matter of law. As the Court stated in its ruling, "As Entergy fails to demonstrate an OPLSA violation by J&J, it has not shown that it is entitled to summary judgment on its claim for indemnity." <u>Id</u>. at 5. The Court did not address any allocation of fault. <u>See id</u>.

Because J&J, through Deloach, settled Entergy's cross-claims without a determination of fault (as opposed to a legal bar -- LWCA immunity in this case -- preventing such a determination), J&J is precluded from seeking indemnity for its costs

---

[10] J&J argues the Court's "finding" of its no fault was the likely reason Deloach was able to obtain a dismissal of this claim. <u>See id</u>. However, Entergy released its claims via a settlement agreement in which Entergy received a payment. <u>See</u> Record Document 160 at 7. The terms of the settlement agreement are confidential; however, Deloach states in its opposition that "Entergy released its claims in exchange for payment issued by LUBA[CI], the workers' compensation insurer of Deloach." <u>Id</u>.

incurred in defending against Entergy's cross-claims. See BJ Servs. Co., USA v. Thompson, 2010 WL 2024725, *9 (W.D. La. 2010) (Judge Trimble citing Tanksley with approval in holding that because an indemnitee settled its underlying claims without a determination of fault, it was precluded by the LOIA from seeking indemnity from its indemnitor).

### D. J&J is Entitled to Recover Attorneys' Fees and Costs in Pursuing Indemnification

J&J also asserts it is entitled to recover the amount of attorneys' fees and expenses incurred in pursuing its defense and indemnification from Deloach under the Subcontract. See Record Documet 155-1 at 16. Deloach does not address this issue in any of its briefs.

Paragraph 20 of the Subcontract provides:

> 20.     In the event Contractor (J&J) employs an attorney to enforce any of the provisions hereof, or to protect its interest in any matter arising under this Agreement, or to collect damages for breach of this Agreement, or to prosecute or defend any suit resulting from this Agreement, or to recover on the surety bond given by Subcontractor under this Agreement, Subcontractor (Deloach) and his surety, jointly and severally, agree to pay Contractor all costs, charges, expenses and attorneys' fees expended or incurred therein …

Record Document 137-1.

Attorneys' fees are generally not allowed except where authorized by statute or contract; however, Louisiana law is well settled that clauses like this are enforceable. See Naquin v. Louisiana Power & Light Co., 2005-2104 (La. App. 1 Cir. 11/17/06), 951 So. 2d 228, 232, writ denied, 2006-2979 (La. 3/9/07), 949 So. 2d 441, citing Richey v. Moore, 36,785 (La. App. 2 Cir. 3/7/03), 840 So.2d 1265, 1268, writ denied, 03-0987 (La.5/30/03), 845 So.2d 1054; Burns v. McDermott, Inc., 95–0195 (La. App. 1 Cir. 11/9/95), 665 So.2d 76, 79; Wuertz v. Tobias, 512 So.2d 1209, 1212 (La. App. 5 Cir.1987). Here, J&J did

employ an attorney, both to defend and prosecute suits arising out of the Subcontract. Accordingly, J&J is entitled to recover not just the costs of defense under Paragraph 10, but the attorneys' fees expended in recovering these sums from Deloach, including fees and costs incurred in J&J's instant motion.

As Deloach asserts, and J&J does not dispute, J&J is entitled to recover reasonable defense costs and attorneys' fees. <u>See</u> Record Document 160 at 11, <u>citing</u> <u>Nassif v. Sunrise Homes, Inc.</u>, 98-3193 (La. 6/29/99), 739 So.2d 183, 184. However, J&J merely sought partial summary judgment decreeing that Deloach is liable for such costs and attorneys' fees, rather than seeking a determination that said attorneys' fees and costs are reasonable. <u>See</u> Record Document 161 at 6. The issue of the reasonableness of attorneys' fees and costs is not before the Court in the context of J&J's motion.

**CONCLUSION**

Based on the foregoing, Deloach's "Motion for Summary Judgment" is **DENIED** and J&J's "Motion for Partial Summary Judgment" is **GRANTED IN PART** and **DENIED IN PART**. Regarding LUBACI's negligence claim, the case never reached the issue of J&J's negligence because of a legal bar – LWCA immunity. For this reason, J&J is entitled to recover its costs of defense, attorneys' fees, and expenses incurred in defending against LUBACI's claim. J&J is also entitled to its costs and attorneys' fees in pursuing indemnification against Deloach, including fees and costs incurred in this Motion. Conversely, because J&J settled Entergy's claim without a determination of fault, J&J is precluded from seeking indemnity from Deloach for its costs of defense, attorneys' fees, and expenses incurred in defending against Entergy's claim.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 11th day of July, 2018.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT